Filed 10/17/23  Estate of Gleason CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| Estate of CAROLE GLEASON, Deceased. | B320039 (Los Angeles County Super. Ct. No. 18STPB03024) |
| JAMES L. LEESTMA, as Successor Administrator, Petitioner and Respondent, v. PATRICIA GLEASON WILLIAMS et al., Objectors and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Daniel Juarez, Judge.  Affirmed.

Law Office of Michael Mogan and Michael Mogan for Objectors and Appellants.

Schindler Eyrich and John F. Eyrich for Petitioner and Respondent.

_____

Patricia Gleason Williams and her daughter, Nakia Woodson, appeal from the probate court's order requiring them to (1) transfer real property to James L. Leestma as administrator of Carole Gleason's estate; (2) pay a surcharge of $350,000 to the estate (with a second $350,000 surcharge satisfied by reconveyance of the real property); and (3) pay attorneys' fees and costs to Leestma and two heirs—Kenji Gleason and Arthur Gleason.[1]  On appeal, Williams and Woodson contend Woodson's due process rights were violated because she was not timely served with Leestma's Probate Code section 850[2] petition prior to trial, and the probate court abused its discretion in denying her request for a trial continuance.  They also argue there was not substantial evidence to support the surcharges the court imposed against them for bad faith under section 859 and Williams's breach of fiduciary duty under section 9601.  Further, they maintain the probate court abused its discretion in granting attorneys' fees and costs to Leestma, Kenji, and Arthur.  They also object to the probate court's statement of decision.  We affirm.

_____

[1]  We refer to the Gleasons by their first names to avoid confusion.

[2]  Further undesignated statutory references are to the Probate Code.

2

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *The Administrators of Carole Gleason's Estate*

On September 15, 2017 Carole died without a will.  Carole was survived by her four adult children: Williams, Kenji, Kevin, and Paschell Gleason.  Arthur is the father of the four children; at the time of Carole's death, she and Arthur were divorced.  At that time, Carole owned a house located on South Hobart Boulevard in Los Angeles (Hobart property).

On May 2, 2018 the probate court granted Paschell's petition for letters of administration and appointed her the administrator of Carole's estate.  In September and November 2018 Kevin executed two assignments of his interest in the estate ($18,000 each) to Advance Inheritance, LLC as consideration for two cash advances of $10,000 each.  After Paschell died in January 2019, the court granted Williams's petition for letters of administration and appointed her as successor administrator on March 18, 2019.[3]

On July 24, 2019 Advance Inheritance, through its attorney James L. Leestma,[4] filed a petition to remove Williams as administrator, to require Williams to sell the Hobart property and provide an accounting, and for reimbursement of its attorneys' fees and costs.  On the same date, Advance Inheritance

---

[3]  Paschell died intestate and did not have a spouse, partner, or any children at the time of her death.  On July 22, 2021 the probate court found Arthur was entitled to inherit Paschell's share of Carole's estate.

[4]  Leestma is an attorney, investor, and president of Advance Inheritance.

filed a petition requesting the probate court appoint Leestma as successor administrator. On December 12, 2019 Leestma recorded a lis pendens on the Hobart property.[5]

On January 17, 2020, after hearing testimony and argument by the attorneys, the probate court removed Williams as administrator; ordered Williams to file a final accounting; granted Advance Inheritance's request for attorneys' fees and costs; and appointed Leestma as successor administrator.

On April 20, 2020 Williams filed a first account, in which she included a creditor's claim of $16,293 by Woodson, which she had allowed prior to her removal as administrator. Williams stated in her account with respect to Woodson's claim, "$15,000 of this amount represents funds paid on behalf of Kevin Gleason to James Leestma's company Advanced [Inh]eritance LLC. The other $1,293 represents homeowners insurance paid for [the Hobart property]."

B.  *Leestma's Section 850 Petition and Williams's Petition To Remove Leestma*

On August 13, 2020 Leestma, as successor administrator, filed a petition (section 850 petition) requesting the probate court (1) determine the estate's ownership of the Hobart property (§ 850, subd. (a)(2)(C) & (D)); (2) direct transfer of the Hobart property to the estate (§ 856); (3) quiet title; and (4) award double

---

[5]     The notice of recording of lis pendens was filed in the probate court on August 14, 2020. The proof of service stated the document was served by mail on all interested parties, including Williams, Woodson, and Williams's attorney, Michael Mogan, who later also represented Woodson.

damages and attorneys' fees and costs (§ 859). Leestma argued Williams transferred the Hobart property to a trust established by Williams with no consideration and without court approval or notice of proposed action to interested parties. The section 850 petition and notice of hearing were served on Williams, Woodson, and Williams's attorney, Michael Mogan, among others.

In her September 11, 2020 response and affirmative defenses to the section 850 petition, Williams argued she conveyed the Hobart property to Certified Holding Trust "to enable a bank to lend money to such trust to make improvements on the [p]roperty to benefit all beneficiaries of the estate." Williams alleged as her fifth affirmative defense that Certified Holding Trust owned title to the Hobart property, and she sought affirmative relief to quiet title against Leestma.

On March 25, 2020 Williams filed a petition to remove Leestma as the successor administrator. In her October 20, 2020 supplement to the petition, Williams requested an evidentiary hearing to resolve her petition and Leestma's section 850 petition. She asserted, "[T]he title of the real estate was transferred to a trust to obtain bank financing such financing which was not possible while the property was in the name of the estate." She further stated that "her two siblings were well aware of her attempts to secure financing before such transfer and did not object."

On October 28, 2020 Kenji filed a verified response to Williams's supplement in support of her petition to remove Leestma as administrator in which he denied knowledge of Williams's attempts to secure financing. Kenji also stated he was not aware of Williams's transfer of the Hobart property from the probate estate to a trust and did not consent to the conveyance.

5

On July 9, 2021 Leestma filed a supplement to his section 850 petition, naming Woodson as a respondent in her capacity as the trustee of Certified Holding Trust. On July 22 Woodson, represented by Mogan, filed her response and affirmative defenses to the section 850 petition. Woodson stated that Williams transferred the Hobart property to the trust to obtain a loan to make improvements on the property to benefit all beneficiaries. She alleged on information and belief that Kenji and Kevin were fully aware and did not object to the transfer of title. Woodson stated further there was consideration for the conveyance because as the trustee she repaid Kevin's debt to Leestma and paid off the debt incurred to make improvements to the Hobart property. Woodson also alleged as her fifth affirmative defense that Certified Holding Trust held title to the Hobart property, and she sought affirmative relief quieting title against Leestma.

C.    *The Trial Testimony*

At the July 27, 2021 court trial on the section 850 petition, Leestma testified on his own behalf and called Williams and Woodson as witnesses.[6]

---

[6]    Following the trial on the section 850 petition, the court held a trial on Williams's petition to remove Leestma as successor administrator. Because Williams does not appeal the probate court's denial of her petition to remove Leestma, we discuss only the trial testimony relating to the section 850 petition.

6

1. *Williams's appointment as successor administrator and transfer of the Hobart property*

Williams testified that on March 19, 2019 the probate court appointed her as successor administrator of Carole's estate. Williams acknowledged she read and signed a form advising her of the duties and liabilities of a personal representative, including the duties to "'keep estate assets separate'" and to "not spend any of the estate's money unless [she] received permission from the court or [had] been advised to do so by an attorney." The form further stated that if Williams did not "obtain the court's permission when it is required [she] may be removed as personal representative or [she] may be required to reimburse the estate from [her] own personal funds, or both."

Williams testified that when she was the administrator, she spoke with Kenji and Kevin about making repairs to the Hobart property. Williams did not discuss the matter with her father (Arthur), and she opposed his petition for entitlement to the estate "[b]ecause [her] dad had stated time and again that he didn't want to have anything to do with the house."

Williams acknowledged that on April 11, 2019, as executor of Carole's estate, she signed a grant deed conveying the Hobart property to Certified Holding Trust, which Williams had created in early 2019.[7] Woodson was the trustee and sole beneficiary of the trust. Woodson, who graduated from law school but was not a licensed attorney, helped prepare the trust document for Certified Holding Trust and the grant deed conveying the Hobart property to the trust. Williams admitted the estate did not

_____

[7] Williams acknowledged the probate court appointed her as administrator, not executor.

7

receive any consideration for the conveyance of the Hobart property to the trust. Williams denied she transferred the Hobart property, in effect, to disinherit Kevin and Kenji. She claimed "they both were aware," but she admitted she did not have the written consent of Kevin, Kenji, or Arthur to transfer the Hobart property out of the estate. Woodson testified Kevin orally consented to the transfer of the property to Certified Holding Trust because he did not have the money to pay the debt he owed to Leestma. According to Woodson, Kenji also consented to the transfer because he did not have "money to do anything."

Both Williams and Woodson testified the Hobart property was transferred to Certified Holding Trust to obtain a loan to pay for improvements to the property. Woodson applied for a loan of $371,000. She testified Williams, Kevin, and Kenji agreed to split $200,000 of the loan proceeds, with the remaining $150,000 designated for repairs of the Hobart property and $21,000 to pay off Advance Inheritance.[8] But Williams and Woodson were unable to get a loan. Further, they could not complete repairs to the Hobart property because the lis pendens was recorded on the property. Williams admitted she hired a contractor to demolish the kitchen and bathroom, but no improvements to the Hobart property were ever made.

---

[8] Woodson testified she did not speak with Arthur about the loan because at that time he had not yet filed his petition to determine entitlement to the estate. Further, the last time Woodson spoke with Arthur, "he told [her], Kenji, [Williams] and Kevin he wanted nothing to do with the property."

2.     *Removal of Williams as administrator*

Leestma testified that on July 24, 2019 he filed a petition on behalf of Advance Inheritance to remove Williams as administrator of Carole's estate.  From August 5 to 9 Woodson called and exchanged emails with him, with a copy to Williams, offering to pay $36,000 to Advance Inheritance to satisfy Kevin's debt in exchange for withdrawal of Leestma's petition.  Woodson paid $15,000 toward one of the $18,000 assignments on September 15, 2019.  Neither Woodson nor Williams informed Leestma that the Hobart property had been transferred out of Carole's estate.

Woodson recorded the grant deed on August 29, 2019.  Williams admitted that at the time of the recording, she was aware of the petition to remove her as administrator.  On December 5, 2019 Leestma sent an email to Williams (with a copy to Woodson and others), in which he informed Williams that she had violated her fiduciary duty by removing the sole estate asset without notice to the interested parties and their lawyers.  Leestma testified he "never received an email [in response] indicating that she would return the Hobart property to the estate."

Leestma testified that immediately after the January 17, 2020 hearing on Advance Inheritance's petition to remove Williams as administrator, he asked Woodson in the court hallway to return the Hobart property to the estate, and she refused.  In her testimony, Woodson denied this conversation took place, instead recounting that Leestma told her, "I'm taking the family house.  I'm going to make sure you guys get nothing," and "the attorneys' fees will outweigh everything."  Williams

9

testified Leestma told her, "Ms. Williams, I am sorry for your loss, but I'm going to make sure that you don't get a dime of it."

3. *Leestma's appointment as successor trustee and his efforts to return the Hobart property to the estate*

On February 4, 2020 the probate court issued letters of administration to Leestma as successor administrator. On February 7 Leestma, as successor administrator, sent Williams and Woodson a letter by mail and email, demanding they return the Hobart property to the estate. Neither Williams nor Woodson agreed to return the property. On July 8 and August 14 Leestma's attorney sent letters to Mogan requesting return of the Hobart property to the estate. Neither Mogan nor his clients (Williams and Woodson) at any time agreed to return the property to the estate.

According to Leestma, the probate referee determined the value of the Hobart property was $350,000. Leestma testified that before and after his appointment as administrator, he received an offer of $375,000 to purchase the Hobart property, but the estate could not sell the property because it had been transferred out of the estate. As of the trial date, the property had not yet been transferred back into the estate. Williams admitted she did not return the Hobart property to the estate because she wanted to keep the property. Woodson opined, based on her experience as a Nevada real estate salesperson, that the value of the Hobart property was less than $200,000 "because unfortunately we started demolition." Further, she refused to transfer the Hobart property back to the estate because she was the bona fide purchaser. According to Woodson, the consideration for the purchase was the $15,000 she paid to

10

Advance Inheritance to satisfy Kevin's assignment of his interest to the company.

D.  *Statement of Decision and Order*

On December 14, 2021 the probate court issued a proposed statement of decision on Leestma's section 850 petition and Williams's petitions to approve her first account and remove Leestma as administrator.  On December 22 Williams and Woodson filed joint objections, arguing the probate court did not state the factual and legal bases for its decision and its findings and rulings were ambiguous.

On January 7, 2022 the probate court issued its final statement of decision.  The court overruled Williams and Woodson's objections, explaining, "In large part, the objections were disagreements with the court's adjudicated points.  On those issues, the court relies on the evidence in the record.  Where Respondents claim Leestma's filings were untimely, the court simply disagrees based on the court record of filings.  Apart from that, Respondents mostly argued that they had found ambiguities in the court's analysis or a failure on the part of the court to address issues.  In preparing this Statement of Decision, the court reviewed its analyses and the breadth of issues covered as well as all of Respondents' issues as raised in trial and in their objections to the Proposed Statement of Decision.  While the court need not raise every single issue, as Respondents would have it, the Proposed Statement of Decision and this Statement of Decision encompass all significant and material issues that the court must adjudicate to resolve the issues before it.  Where the court did not address a particular issue, it was either subsumed by other issues raised or irrelevant to the overall adjudication."

11

The court also rejected the argument Woodson was not provided proper notice of Leestma's section 850 petition, relying on "the evidence of service."

The probate court found Williams, as administrator, violated her fiduciary duty to marshal and preserve the estate as required under section 9601, subdivision (a). The court rejected Williams and Woodson's argument they were bona fide purchasers, finding "they failed to pay value for the transfer, gave no notice, and their actions cannot be found to be in good faith." The court also rejected the argument that the transfer of the Hobart property to Certified Holding Trust was temporary. The court reasoned, "Had it been temporary for the obtaining of a loan (a loan that never materialized), once Gleason Williams was removed, the property should have been returned to the estate. Instead, Gleason Williams argued, alternatively it appears, that she and Woodson should remain owners of the property outright." The court found, "Gleason Williams' transfer of the property without proper notice, as required in her capacity as administrator, without consideration, and without consent by the heirs, and without any plausible reason, qualify as actions in bad faith. Respondents' consistent refusal to return the property to the decedent's estate, even after Gleason Williams was removed for those actions, and even currently, solidifies the finding of bad faith."

The court imposed a constructive trust (Civ. Code, §§ 2223, 2224) and ordered Williams and Woodson to transfer the Hobart property to Leestma as successor administrator of the estate. Pursuant to section 859, the court surcharged Williams and Woodson $700,000 (twice the $350,000 property value) with $350,000 satisfied by the return of the Hobart property to the

12

estate and the remaining $350,000 payable to the estate. The court also ordered Williams and Woodson to pay attorneys' fees and costs to Leestma ($66,782), Kenji ($7,497), and Arthur ($17,242) pursuant to section 859.

On February 24, 2022 the probate court entered an order requiring Williams and Woodson to (1) transfer the Hobart property to Leestma as administrator; (2) pay a surcharge of $350,000 to the estate (with the other $350,000 surcharge satisfied by reconveyance of the Hobart property); and (3) pay attorneys' fees and costs to Leestma, Kenji, and Athur. Williams and Woodson timely appealed from the February 24, 2022 order.[9]

## DISCUSSION

A. *Williams and Woodson Did Not Appeal from the Order Denying in Part Williams's Account*

As discussed, in her first account Williams approved Woodson's creditor's claim, which included $15,000 that Woodson paid on behalf of Kevin to Advanced Inheritance to partially satisfy one of Kevin's assignments of his interest in the estate in exchange for a $10,000 cash advance. In its statement of decision, the court denied Woodson's creditor's claim, explaining "[t]here was insufficient evidence that the partial assignment was a debt or liability of the estate." The court approved Williams's account in part, conditioning approval on Williams and Woodson's return of the Hobart property to the estate. On

---

[9] Although the notice of appeal states the appeal is taken from a February 25, 2022 order, it is clear from context Williams and Woodson intended to appeal from the February 24 order.

13

February 24, 2022 the court entered an order granting in part and denying in part Williams's first account.

On appeal, Williams and Woodson contend the probate court erred in sustaining Leestma's objections to Williams's first account and denying Woodson's claim. But we lack jurisdiction to consider the issue because Williams and Woodson did not appeal from the February 24, 2022 order granting in part and denying in part Williams's first account. Williams and Woodson only attach to their April 11, 2022 notice of appeal the February 24, 2022 order granting Leestma's section 850 petition, and they likewise attach that order to their civil case information statement.

Further, the April 11, 2022 notice of appeal states the appeal is authorized under section 1300, subdivisions (e), (g), and (k).[10] (See §1300, subds. (e) [order "[f]ixing, authorizing, allowing, and directing payment of compensation or expenses of an attorney" is appealable], (g) [order "[s]urcharging, removing, or discharging a fiduciary" is appealable], (k) [order "[a]djudicating the merits" of a section 850 claim is appealable].) The notice of appeal does not state the appeal includes an order made appealable under section 1300, subdivision (b), which lists an order "[s]ettling an account of a fiduciary," or subdivision (c), which lists an order "approving or confirming the acts of a fiduciary."

Williams and Woodson contend we have jurisdiction to review the order on Williams's account because they appealed from the statement of decision in their February 9, 2022 notice of appeal (case no. B318601) and included the statement of decision

_____

[10] The notice of appeal mistakenly cites to Code of Civil Procedure section 1300 instead of Probate Code section 1300.

14

as an attachment.  However, "a statement of decision is not treated as appealable when a formal order or judgment does follow." (*Alan v. American Honda Motor Co., Inc.* (2007) 40 Cal.4th 894, 901; accord, *Marshall v. Webster* (2020) 54 Cal.App.5th 275, 280.)  We therefore dismissed Williams and Woodson's appeal in case no. B318601 on September 13, 2022, after Williams and Woodson failed to file a response to our July 21, 2022 order advising them of our intent to dismiss the appeal as taken from a nonappealable order.

B.     *The Probate Court Did Not Violate Woodson's Due Process Rights or Abuse Its Discretion in Denying Woodson's Request for a Trial Continuance*
       1.     *Probate court proceedings*
       On July 13, 2021 Woodson filed an ex parte application seeking to continue the trial and reopen discovery.  Woodson argued she had shown good cause for a continuance because she was not served with Leestma's supplement to the section 850 petition at least 16 court days before the July 27, 2021 trial, citing Code of Civil Procedure section 1005, subdivision (b). Leestma argued in opposition that he did not know Woodson was the trustee of Certified Holding Trust despite requests for Williams to provide this information until Williams disclosed this in her July 7, 2021 deposition; Woodson had notice of the section 850 petition since she was served with it in August 2020; Williams and Woodson asserted the same defenses and shared the same attorney (and Williams and Mogan were served with the section 850 petition);  Woodson failed to identify any additional discovery or documents she needed for trial; and Code of Civil Procedure section 1005, subdivision (b), did not apply.  On

15

July 15, 2021 the probate court denied the ex parte application without prejudice.

### 2. *Woodson's due process rights were not violated*

On appeal, Woodson contends she was deprived of due process because she was not served until July 11, 2021 for a trial that occurred 12 court days later on July 27. Woodson argues Leestma failed to serve her with the section 850 petition and notice of hearing at least 30 days before the hearing as required under section 851, subdivision (a). (§ 851, subd. (a) ["At least 30 days prior to the day of the hearing, the petitioner shall cause notice of the hearing and a copy of the petition to be served . . . on all of the following persons where applicable: [¶] (1) The personal presentative, conservator, guardian, or trustee as appropriate. [¶] (2) Each person claiming an interest in, or having title to or possession of, the property."].)[11]

Woodson was provided timely notice of the section 850 petition pursuant to section 851, subdivision (a). The proof of

_____

[11] Woodson also argues, as she did in the trial court, that she was entitled to 16 court days' notice prior to trial under Code of Civil Procedure section 1005, subdivision (b). That section requires that "all moving and supporting papers shall be served and filed at least 16 court days before the hearing" (plus five days when notice is mailed). However, Probate Code section 1000, subdivision (a), specifies that the Code of Civil Procedure rules apply "[e]xcept to the extent that [the Probate Code] provides applicable rules." Because Probate Code section 851, subdivision (a), governs notice for a Probate Code section 850 petition and hearing, Code of Civil Procedure section 1005, subdivision (b), does not apply.

16

service by mail shows the section 850 petition and notice of hearing were served on Woodson by mail on August 14, 2020 (as well as on Williams, Certified Holding Trust, and Mogan). Although Woodson is correct that she was not specifically named in the 850 petition, the petition named the "Trustee of the Certified Holding Trust" (capitalization omitted), and stated Leestma was "su[ing] Certified Holding Trust through Respondent Patricia Gleason Williams or other trustee." Further, the petition named ROES 1 through 20 as respondents and alleged "ROES 1-20 participated in and assisted Respondent Patricia Gleason Williams in the wrongful takings and breaches of fiduciary duties."

Therefore, as of August 19, 2020 (five days after mailed notice), Woodson was on notice that Leestma's section 850 petition sought an order (1) voiding the April 11, 2019 grant deed; (2) directing Williams and Certified Holding Trust and its trustee to transfer the Hobart property to Leestma as successor administrator; (3) declaring Williams and Certified Holding Trust and its trustee as constructive trustees; and (4) awarding reasonable attorneys' fees. Further, on July 8, 2021 Leestma served the supplement to the section 850 petition on Woodson and Mogan by mail and email, specifically naming Woodson as a respondent in her capacity as the trustee of Certified Holding Trust. Woodson therefore had 11 months to prepare prior to the July 27, 2021 trial on the section 850 petition.

> 3. *The probate court did not abuse its discretion in denying Woodson's request for a trial continuance*

Requests for a trial continuance are governed by rule 3.1332 of the California Rules of Court (rule 3.1332).

17

"Although continuances of trials are disfavored, each request for a continuance must be considered on its own merits. The court may grant a continuance only on an affirmative showing of good cause requiring the continuance." (Rule 3.1332(c); see *Qaadir v. Figueroa* (2021) 67 Cal.App.5th 790, 813; *Reales Investment, LLC v. Johnson* (2020) 55 Cal.App.5th 463, 468.) Among the circumstances the court may consider as good cause is where a newly added party "has not had a reasonable opportunity to conduct discovery and prepare for trial" (rule 3.1332(c)(5)(A)) or "[a] party's excused inability to obtain essential testimony, documents, or other material evidence despite diligent efforts" (rule 3.1332(c)(6)). "The trial court must consider all relevant facts and circumstances surrounding the continuance, including: '[t]he proximity of the trial date' (rule 3.1332(d)(1)); '[t]he length of the continuance requested' (rule 3.1332(d)(3)); '[t]he availability of alternative means to address the problem that gave rise to the motion or application for a continuance' (rule 3.1332(d)(4)); '[t]he prejudice that parties or witnesses will suffer as a result of the continuance' (rule 3.1332(d)(5)); and '[w]hether the interests of justice are best served by a continuance, by the trial of the matter, or by imposing conditions on the continuance' (rule 3.1332(d)(10))." (*Qaadir*, at p. 813.)

"'The decision to grant or deny a continuance is committed to the sound discretion of the trial court. [Citation.] The trial court's exercise of that discretion will be upheld if it is based on a reasoned judgment and complies with legal principles and policies appropriate to the case before the court. [Citation.] A reviewing court may not disturb the exercise of discretion by a trial court in the absence of a clear abuse thereof appearing in the record.'" (*Reales Investment, LLC v. Johnson, supra*,

18

55 Cal.App.5th at p. 468; accord, *Qaadir v. Figueroa, supra,* 67 Cal.App.5th at p. 814.)

Woodson contends the probate court abused its discretion in denying her request for a trial continuance. However, she failed to make an affirmative showing of good cause, as required under rule 3.1332(c). In her ex parte application, she argued only that she was "requesting a 90 day continuance so she can propound written discovery upon James Leestma as success[o]r administrator and also so she is able to adequately prepare for trial especially when such inordinate damages are sought." Woodson failed to identify in her ex parte application (or on appeal) what discovery she needed to propound to Leestma. Further, as discussed, she and Williams, who were sued for the same conduct and shared an attorney, had 11 months in which to propound discovery and prepare for trial. In the absence of any showing as to what Woodson still needed to do to prepare for trial, the probate court acted well within its discretion in denying her ex parte application for a trial continuance.

C. *Substantial Evidence Supports the Order Requiring Williams and Woodson To Convey the Hobart Property and Imposing Surcharges for Bad Faith Conduct and Breach of Fiduciary Duty*

1. *Standard of review*

"On appeal from a judgment based on a statement of decision after a bench trial, we review the trial court's conclusions of law de novo and its findings of fact for substantial evidence." (*McPherson v. EF Intercultural Foundation, Inc.* (2020) 47 Cal.App.5th 243, 257; accord, *Estate of Young* (2008) 160 Cal.App.4th 62, 75-76.) "'In a substantial evidence challenge

19

to a judgment, the appellate court will "consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings].""" (*Kao v. Joy Holiday* (2020) 58 Cal.App.5th 199, 206; accord, *Estate of Young*, at p. 76.) "We may not reweigh the evidence and are bound by the trial court's credibility determinations." (*Estate of Young*, at p. 76; accord, *In re Marriage of Ciprari* (2019) 32 Cal.App.5th 83, 94.) """The ultimate determination is whether a *reasonable* trier of fact could have found for the respondent based on the *whole* record.""" (*McPherson*, at p. 257; *Estate of Young*, at p. 76.)

2. *Governing law*

Section 850, subdivision (a)(2), authorizes the personal representative or any interested person to file a petition for a court order "[w]here the decedent died in possession of, or holding title to, real or personal property, and the property or some interest therein is claimed to belong to another" or "[w]here the decedent died having a claim to real or personal property, title to or possession of which is held by another." (§ 850, subd. (a)(2)(C) & (D).) "'[T]he statutory scheme's purpose is to effect a conveyance or transfer of property belonging to a decedent or a trust or another person under specified circumstances, to grant any appropriate relief to carry out the decedent's . . . intent, and to prevent looting of . . . estates.'" (*Dudek v. Dudek* (2019) 34 Cal.App.5th 154, 170-171; accord, *Estate of Ashlock* (2020) 45 Cal.App.5th 1066, 1073 ["Section 850 et seq. 'provides a mechanism for court determination of rights in property claimed to belong to a decedent or another person.'"].)

Upon a showing that a transfer or conveyance should be made, the probate court "shall make an order authorizing and directing the personal representative or other fiduciary, or the person having title to or possession of the property, to execute a conveyance or transfer to the person entitled thereto, or granting other appropriate relief." (§ 856.) An order under section 856 "is prima facie evidence of the correctness of the proceedings and of the authority of the personal representative or other fiduciary or other person to make the conveyance or transfer, and the order vests the person obtaining the order with the right to the possession of the property according to the terms of the order, 'as if the property had been conveyed or transferred in accordance with the terms of the order.'" (*Estate of Young, supra*, 160 Cal.App.4th at p. 86; see § 857.)

"A petitioner may recover property under section 856 and seek additional relief under section 859." (*Estate of Ashlock, supra*, 45 Cal.App.5th at p. 1073.) Section 859 provides for double damages upon a showing of bad faith: "If a court finds that a person has in bad faith wrongfully taken . . . property belonging to . . . the estate of a decedent, . . . the person shall be liable for twice the value of the property recovered by an action under this part. . . . The remedies provided in this section shall be in addition to any other remedies available in law to a person authorized to bring an action pursuant to this part." Although "section 859 is punitive in nature" (*Conservatorship of Ribal* (2019) 31 Cal.App.5th 519, 525), "double damages are not the equivalent of 'punitive damages, and the proof required for punitive damages is not required.'" (*Ibid*.; accord, *Hill v. Superior Court* (2016) 244 Cal.App.4th 1281, 1287, 1291.) "The section 859 penalty is imposed when an interested party

21

establishes both that the property in question is recoverable under section 850 and that there was a bad faith taking of the property." (*Estate of Kraus* (2010) 184 Cal.App.4th 103, 112; accord, *Conservatorship of Ribal*, at p. 525.)

Because section 859 does not define "bad faith," we look to the definition of bad faith as used in analogous statutory provisions. For example, section 15642, subdivision (d), authorizes an award of reasonable attorneys' fees and costs to a trustee where a petition to remove the trustee is filed in bad faith. The Court of Appeal in *Bruno v. Hopkins* (2022) 79 Cal.App.5th 801, 823 (*Bruno*), in affirming an attorneys' fees award in favor of the trustee where a trust beneficiary filed a bad faith petition to remove the trustee, explained, "'Bad faith involves a subjective determination of the contesting party's state of mind—specifically, whether he or she acted with an improper purpose.'" (Accord, *Powell v. Tagami* (2018) 26 Cal.App.5th 219, 233-234 [applying same definition of bad faith in interpreting section 17211, subdivision (a), which authorizes an award of trustee compensation and litigation costs where a beneficiary contests a trustee's account in bad faith]; see *Gemini Aluminum Corp. v. California Custom Shapes, Inc.* (2002) 95 Cal.App.4th 1249, 1263 [Civil Code section 3426.4's authorization for recovery of costs and attorneys' fees for a claim of misappropriation of trade secrets made in bad faith requires inquiry into a party's subjective state of mind in filing the action: "'Did he or she believe the action was valid? What was his or her intent or purpose in pursuing it? . . . .' "'[B]ad faith" means simply that the action or tactic is being pursued for an improper motive.'"].) ""'A subjective state of mind will rarely be susceptible of direct proof; usually the trial court will be required to infer it

22

from circumstantial evidence.'"'" (*Bruno*, at p. 823; accord, *Powell*, at p. 234.)

A personal representative "is required to use 'ordinary care and diligence' in managing and controlling the estate." (*Estate of Bonaccorsi* (1999) 69 Cal.App.4th 462, 468; see § 9600, subd. (a) ["The personal representative has the management and control of the estate and, in managing and controlling the estate, shall use ordinary care and diligence. What constitutes ordinary care and diligence is determined by all the circumstances of the particular estate."].) Section 9061, subdivision (a), authorizes a probate court to impose a surcharge on a personal representative who causes losses to the estate by a breach of fiduciary duty. (*Ring v. Harmon* (2021) 72 Cal.App.5th 844, 852 [beneficiary of an estate may recover for breach of fiduciary duty where "the representative has entered a transaction that benefits third parties at the expense of the estate and its beneficiaries"]; *Estate of Kampen* (2011) 201 Cal.App.4th 971, 988.) Section 9601, subdivision (a), specifies: "If a personal representative breaches a fiduciary duty, the personal representative is chargeable with any of the following that is appropriate under the circumstances: [¶] (1) Any loss or depreciation in value of the decedent's estate resulting from the breach of duty, with interest. [¶] (2) Any profit made by the personal representative through the breach of duty, with interest. [¶] (3) Any profit that would have accrued to the decedent's estate if the loss of profit is the result of the breach of duty." (Accord, *Ring*, at p. 852.)

3. *Substantial evidence supports the probate court's order directing Williams and Woodson to transfer the Hobart property and awarding double damages against Williams and Woodson for bad faith conduct and Williams's breach of fiduciary duty*

Williams and Woodson contend the probate court erred in (1) directing them to reconvey the Hobart property; (2) imposing double damages against Williams and Woodson under section 859; and (3) surcharging Williams for breach of fiduciary duty under section 9601. The court's order was based on its findings that Williams and Woodson acted in bad faith and Williams breached her fiduciary duty. The court found Williams failed to provide notice to the other heirs of her proposed action to transfer the property; she failed to obtain prior court approval; she failed to obtain the written consent of the other heirs; and Woodson provided no consideration for the transfer. Further, the court found Williams and Woodson intended to keep the Hobart property for themselves and denied the heirs their share in the proceeds. Substantial evidence supports the court's findings.[12]

Ample evidence supports the probate court's finding Williams transferred the Hobart property to Certified Holding Trust without providing any written notice to Leestma, Kenji, or Arthur. Sections 10510 and 10511, read together, required Williams to provide notice to the other heirs of the proposed transfer before conveying the Hobart property to the trust.

---

[12] We do not reach the court's finding that Williams failed to obtain prior court approval because we conclude the trial court's other findings support its determination Williams acted in bad faith.

24

Chapter 3, article 2 of the Probate Code, titled "Powers Exercisable Only After Giving Notice of Proposed Action," includes sections 10510 and 10511. Section 10511 provides that a personal representative with full authority has the power to sell or exchange real property of the estate. And section 10510 states the "personal representative may exercise the powers described in this article" (article 2) "only if the requirements of Chapter 4" (titled "Notice of Proposed Action Procedure") are satisfied.[13] The inclusion of section 10511—authorizing the personal representative to sell estate property—in article 2, listing powers exercisable "only after giving notice of proposed action" (capitalization omitted), shows the Legislature's intent to require the personal representative to provide notice prior to a sale of

_____

[13] Section 10580, subdivision (a), specifies that "[a] personal representative who has been granted authority to administer the estate under this part shall give notice of proposed action as provided in this chapter prior to the taking of the proposed action without court supervision if the provision of Chapter 3 (commencing with Section 10500) giving the personal representative the power to take the action so requires." Williams and Woodson in their appellants' opening brief cite without analysis section 10503, which is titled "Sale of Property of Estate; Court Confirmation of Sales Not Required; Limitations." Although the section states "the personal representative may sell the property either at public auction or private sale, *and with or without notice*" (italics added), this section (in article 1 containing "General Provisions") delineates the manner of sale of property, not whether notice of the proposed action must be given (governed by articles 2 and 3). There may be circumstances where notice need not be given, but this is not one of them.

25

real property.[14]  By contrast, article 3 titled "Powers the Exercise of Which Requires Giving of Notice of Proposed Action Under Some Circumstances" does not include the sale of property, instead including sections governing other actions such as the power to enter into contracts.  (See § 10532.)

As the California Law Revision Commission (Commission) explained in its comment to the 1990 reenactment of section 10511, "The power described in Section 10511 may be exercised only if the requirements of Chapter 4 (commencing with Section 10580) (notice of proposed action procedure) are satisfied. See Section 10510."[15]  (54 West's Ann. Prob. Code (1991 ed.) foll.

_____

[14]    We treat the transfer as a sale given Williams and Woodson's position that they transferred the property for consideration and did not need to return it.

[15]    The Legislature first enacted section 10511 in 1987 (Stats. 1987, ch. 923, § 93), and it repealed and reenacted the statute in 1990, with no changes (Stats. 1990, ch. 79, §§ 13-14, operative July 1, 1991).  The Commission's 1987 comment to section 10511 explained, "Section 10511, together with Section 10510, restate without substantive change a portion of subdivision (a) of former Section 591.6 (powers of personal representative) and subdivision (b)(1) of former Section 591.3 (notice of proposed action required). . . .  The power described in Section 10511 may be exercised only if the requirements of Chapter 4 (commencing with Section 10580) (notice of proposed action procedure) are satisfied.  See Section 10510." (Communication from California Law Revision Commission Concerning Assembly Bill 708, at p. 46.)  The legislative history for Assembly Bill No. 708 (Reg. Sess. 1986-1987) shows the Legislature adopted the recommendations of the California Law Revision Commission for various Probate Code sections,

§ 10511, p. 32; see Ross et. al., Cal. Practice Guide: Probate (The Rutter Group 2023) ¶¶ 9:30, 9:31 [personal representative may sell or exchange of real property under section 10511 "only pursuant to the statutory notice of proposed action procedures"].)[16]

including section 10511.  (See Sen. Com. on Judiciary, Analysis of Assem. Bill No. 708 (1986-1987 Reg. Sess.), as amended July 13, 1987, p. 2 ["The bill resulted from extensive studies and recommendations by the Law Revision Commission."]; Assem. Com. on Judiciary, Analysis of Assem. Bill No. 708 (1986-1987 Reg. Sess.), as amended April 23, 1987, p. 6 [noting legislation was sponsored by Commission].)  Where the Legislature adopts a statute "exactly as the Law Revision Commission proposed, these comments are persuasive evidence of the Legislature's intent." (*People v. Martinez* (2000) 22 Cal.4th 106, 129; accord, *Gormley v. Gonzalez* (2022) 84 Cal.App.5th 72, 80 ["In determining the legislative intent of a statute, it is proper to look to comments by the Commission, which are persuasive evidence of the intent of the Legislature in enacting the Commission's recommendations, particularly where, as here, the Legislature adopted the Commission's recommendation without change."].)

[16]     Section 10585 requires the notice of proposed action be in writing:  "(a) The notice of proposed action shall state all of the following:  [¶]  (1)  The name, mailing address, and electronic address of the personal representative.  [¶]  (2)  The name, telephone number, and electronic address of a person who may be contacted for additional information.  [¶]  (3)  The action proposed to be taken, with a reasonably specific description of the action.  If the proposed action involves the sale or exchange of real property, or the granting of an option to purchase real property, the notice of proposed action shall state the material terms of the

There also was strong evidence that Williams transferred the Hobart property to the trust in bad faith to deprive the other heirs of their share of the property.  Williams argued at trial, as she does on appeal, that she intended to make the transfer to benefit the estate by securing a loan to renovate the property, then return the improved property to the estate.  But as the probate court observed, Williams and Woodson also argued the opposite—that there was consideration for the transfer of the property to Williams and Woodson (payment of Kevin's debt to Advance Inheritance).

As to Williams and Woodson's argument that Williams intended to secure a loan to repair the Hobart property, then return it to the estate, as discussed, Williams never obtained a loan or made any improvements to the property.  Further, Williams and Woodson recorded the deed transferring the

transaction, including, if applicable, the sale price and the amount of, or method of calculating, any commission or compensation paid or to be paid to an agent or broker in connection with the transaction.  [¶]  (4)  The date on or after which the proposed action is to be taken.  [¶]  (b)  The notice of proposed action may be given using the most current Notice of Proposed Action form prescribed by the Judicial Council.  [¶]  (c) If the most current form prescribed by the Judicial Council is not used to give notice of proposed action, the notice of proposed action shall satisfy all of the following requirements:  [¶]  (1)  The notice of proposed action shall be in substantially the same form as the form prescribed by the Judicial Council.  [¶]  (2)  The notice of proposed action shall contain the statements described in subdivision (a).  [¶]  (3)  The notice of proposed action shall contain a form for objecting to the proposed action in substantially the form set out in the Judicial Council form."

property to the Certified Holding Trust after Leestma filed the 850 petition to remove Williams as the trustee.  And after Williams was ordered to provide an accounting, on April 20, 2020 she filed her first account, which listed the Hobart property as property of the estate with no mention that the property had been transferred out of the estate, concealing that fact from the heirs.  Williams and Woodson argue the transfer of the Hobart property to Certified Holding Trust was temporary, and therefore it did not constitute bad faith.  The probate court reasonably rejected this argument, explaining, "Had it been temporary for the obtaining of a loan (a loan that never materialized), once . . . Williams was removed, the property should have been returned to the estate.  Instead, . . . Williams argued, alternatively it appears, that she and Woodson should remain owners of the property outright."

Further, Williams testified she had yet to return the Hobart property to the estate because she wanted to keep the property.  And Woodson testified that if Williams asked her to transfer the Hobart property to the estate, she would not comply "[b]ecause I feel I'm a bona fide purchaser of the property." Woodson's assertion on appeal that "she held the property in a resulting trust with the intention to transfer it back to the estate if the heirs did not accept the $200,000 agreed to," is belied by her own trial testimony.

With respect to consideration, Williams admitted at trial that the estate did not receive any consideration for the conveyance of the Hobart property to the trust.  During cross-examination Williams was asked, "[I]n fact the estate didn't receive any consideration, money or otherwise, for the transfer?" She responded, "Not to my knowledge."  Woodson claimed in her

29

testimony that the $15,000 she paid Advance Inheritance in partial satisfaction of Kevin's $18,000 debt (for assignment of his interest in the estate to Advance Inheritance) constituted consideration and made her a "bona fide purchaser of the property." But Kevin's assignment was not a debt or liability of the estate, and the estate did not directly benefit from Woodson's partial satisfaction of Kevin's assignment. Further, Woodson did not treat the $15,000 payment as consideration for the Hobart property as shown by the fact she submitted a creditor's claim for the $15,000 payment, which Williams approved. In addition, Woodson made the $15,000 payment months *after* the April 11, 2019 transfer of the Hobart property, which makes the payment irrelevant as to consideration because "the adequacy of consideration must be determined as of the date of the agreement." (*Estate of Stevens* (1958) 163 Cal.App.2d 255, 266; accord, *Greif v. Sanin* (2022) 74 Cal.App.5th 412, 444 ["" "[i]n determining whether consideration was fair and adequate, all circumstances surrounding the transfer of the property as they existed at that time, must be considered"""].)

Williams and Woodson's contention that Kevin and Kenji agreed to the transfer fares no better. Williams admitted she did not have the written consent of Kevin, Kenji, or Arthur to transfer the Hobart property out of the estate.[17] Instead, Williams testified she spoke with Kevin and Kenji, who "both were aware" she would obtain a loan to make improvements to

---

[17] Section 10582 provides that "[n]otice of proposed action need not be given to any person who consents in writing to the proposed action. The consent may be executed at any time before or after the proposed action is taken."

the Hobart property. Woodson testified Kevin orally consented to the transfer of the property to the Certified Holding Trust because he did not have the money to pay the debt he owed to Leestma. According to Woodson, Kenji also consented to the transfer because he did not have "money to do anything." The probate court rejected Williams's and Woodson's "self-serving testimony," finding neither Kevin nor Kenji had agreed to the transfer. Other than their own testimony, which was discounted by the probate court, Williams and Woodson on appeal cannot point to any evidence of consent by the other heirs. To the contrary, in Kenji's verified response to Williams's petition to remove Leestma, Kenji stated he was not aware of the conveyance and never consented to it. In addition, Arthur in his declaration in lieu of direct testimony (Code Civ. Proc., § 98) stated he was not aware that Williams had transferred the Hobart property out of the estate, and he did not consent to it. And Williams and Woodson admitted they did not discuss the transfer with Arthur, claiming "he wanted nothing to do with the property."[18]

Accordingly, the evidence that Williams transferred the Hobart property to Certified Holding Trust without consideration, Williams and Woodson concealed that fact from the heirs, and Williams and Woodson refused to return the property to the estate fully supported the probate court's findings of bad faith and breach of fiduciary duty. Further, Williams and

[18] Williams and Woodson also contend Leestma committed bad faith and had unclean hands, but they fail to explain what conduct by Leestma constituted bad faith or unclean hands.

31

Woodson acted with an improper purpose to deprive the heirs of their share of the property. (*Bruno, supra*, 79 Cal.App.5th at p. 823.) And the bad faith and breach of fiduciary duty findings, in turn, supported the probate court's order directing Williams and Woodson to convey the property back to the estate under section 856, imposing double damages under section 859, and surcharging Williams for her breach of fiduciary duty under section 9601.

D.     *The Probate Court Did Not Abuse Its Discretion in Granting Attorneys' Fees and Costs to Leestma, Arthur, and Kenji*

Williams and Woodson contend the probate court abused its discretion in awarding Leestma, Arthur, and Kenji their attorneys' fees and costs under section 859 because there was no bad faith, and further, the amounts awarded were not reasonable. Williams and Woodson's contentions lack merit.

1.     *Governing law and standard of review*

Section 859 provides that a person who has "in bad faith wrongfully taken, concealed, or disposed of property" belonging to the estate, except in circumstances not applicable here, "may, in the court's discretion, be liable for reasonable attorney's fees and costs." "[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate. 'California courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award.' [Citation.] The reasonable hourly rate is that prevailing in the community for similar work. [Citations.] The lodestar figure may then be

32

adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided. [Citation.] Such an approach anchors the trial court's analysis to an objective determination of the value of the attorney's services, ensuring that the amount awarded is not arbitrary." (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.)

"The trial court has broad authority to determine the amount of a reasonable fee." (*PLCM Group, Inc. v. Drexler, supra*, 22 Cal.4th at p. 1095; accord, *Bruno, supra*, 79 Cal.App.5th at p 818.) However, "[w]hile the amount of an attorney fee award is left to the trial court's sound discretion, the entitlement to fees is a matter we review under the de novo standard." (*Conservatorship of Ribal, supra*, 31 Cal.App.5th at pp. 523-524; accord, *Smith v. Szeyller* (2019) 31 Cal.App.5th 450, 457.)

> 2. *The probate court did not abuse its discretion in awarding Leestma his attorneys' fees and costs*

In Leestma's posttrial closing brief, he requested attorneys' fees and costs under sections 859.[19] Leestma submitted a

---

[19] Leestma also based his attorneys' fees request on section 11003, subdivision (b), which provides that if an administrator opposes the contest of his or her accounting "without reasonable cause and in bad faith," the probate court may award attorneys' fees to the contestant. (*Estate of Bonaccorsi, supra*, 69 Cal.App.4th at p. 473; see § 11003, subd. (b) ["If the court determines that the opposition to the contest was without reasonable cause and in bad faith, the court may award the contestant the costs of the contestant and other expenses and

33

declaration from his attorney, John F. Eyrich, in support of his request for attorneys' fees and costs. Eyrich averred that when he was retained in April 2020 his standard hourly rate was $525, but he agreed to a discounted rate of $425 per hour. Eyrich spent a total of 143.8 hours in connection with Leestma's section 850 petition, Williams's account, and Williams's petition to remove Leestma. Eyrich's legal work included fact investigation, legal research, analysis of claims and defenses, written discovery and deposition, correspondence with Leestma, Mogan, and the attorneys for the other heirs, court appearances, trial preparation and trial, and preparation of posttrial briefs. From April 2020 through October 15, 2021, Leestma incurred attorneys' fees of $56,865 (143.8 hours at $425 per hour less a $4,250 discount) and costs of $1,104.[20] In his supplemental declaration, Eyrich stated he expected to spend an additional 20.5 hours ($8,713 in attorneys' fees) to review the billing records, prepare his declaration, and prepare further briefing. Eyrich calculated his total attorneys' fees were $65,578, plus $1,204 in costs. Williams and Woodson opposed Leestma's request for attorneys' fees, simply arguing he sought an "inordinate amount of legal fees."

On February 24, 2022 the probate court ordered Williams and Woodson to pay Leestma's attorneys' fees of $65,578, plus $1,204 in costs (totaling $66,782) pursuant to section 859. In its statement of decision, the court rejected Williams and Woodson's argument "that Leestma's litigation was what drove up costs

---

costs of litigation, including attorney's fees, incurred to contest the account."].)

[20]     Amounts are rounded to the nearest dollar amount.

unnecessarily." Rather, the court found Leestma properly performed his duties as administrator by marshalling the estate's assets.

Williams and Woodson contend the probate court abused its discretion in awarding Leestma his attorneys' fees and costs under section 859 because they did not act in bad faith. As discussed, substantial evidence supports the court's findings that Williams and Woodson acted in bad faith by transferring the Hobart property to Certified Holding Trust without consideration and without first providing written notice to the other heirs.[21]

Williams and Woodson also argue the probate court erred because it did not use the lodestar method to calculate the attorneys' fees awarded to Leestma. Although the probate court did not expressly state it was applying the lodestar method in determining reasonable attorneys' fees, "there is no general rule requiring trial courts to explain their decisions on motions seeking attorney fees. In cases where the award corresponds to either the lodestar amount, some multiple of that amount, or some fraction requested by one of the parties, the court's rationale for its award may be apparent on the face of the record, without express acknowledgment by the court of the lodestar

---

[21] Williams and Woodson also argue Leestma should not have been awarded attorneys' fees and costs for pursuing a quiet title action because each party to a quiet title action should pay his or her own fees and costs. But, as discussed, the probate court awarded Leestma his attorneys' fees and costs pursuant to section 859, which provides for such an award based on bad faith conduct. The fact the bad faith involved a transfer of property does not affect the legal basis for the probate court's award of attorneys' fees and costs.

35

amount or method." (*Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 101; see *Gunther v. Alaska Airlines, Inc.* (2021) 72 Cal.App.5th 334, 361-362.) This is such a case.

The probate court's award of Leestma's attorneys' fees and costs was supported by Eyrich's detailed declarations and billing statement. Williams and Woodson do not contend Eyrich's discounted rate of $425 is higher than the hourly rates charged by other attorneys for similar work. Nor do they identify any specific charges that are objectionable. Williams and Woodson have therefore failed to show the trial court abused its discretion in awarding reasonable attorneys' fees and costs to Leestma under section 859.

3. *The probate court did not abuse its discretion in awarding Arthur and Kenji their attorneys' fees and costs*

a. *Arthur's attorneys' fees and costs*

On March 26, 2019 Arthur filed a petition to determine his entitlement to distribution of a share of Carole's estate after Williams refused to acknowledge his right to inherit as Paschell's intestate heir. On June 26, 2019 Williams filed objections to Arthur's petition, claiming Paschall had gifted her estate to Williams. On July 22, 2021, at the final status conference for the July 27 trial, Williams withdrew her objections, and the probate court found Arthur had submitted sufficient evidence to support his petition. The court granted the petition, finding Arthur was entitled to inherit Paschell's share of Carole's estate.

On October 14, 2021 Arthur filed a brief on surcharge of legal fees against Williams under section 9601 for her breach of fiduciary duty. Arthur argued that had Williams not made

36

meritless objections to his petition to determine entitlement, the probate court would have approved his petition without objection, and he would have incurred only $3,863 in attorneys' fees and $557 in costs. But because Arthur had to respond to Williams's objections and participate in the protracted litigation that resulted from Williams's breach of fiduciary duty and bad faith in converting the Hobart property, Arthur incurred an additional $16,913 in attorneys' fees and $329 in costs. Arthur attached two billing statements from his attorney, Sandra B. DeMeo: a statement for $4,420 reflecting attorneys' fees and costs from March 25 to June 5, 2019 for filing Arthur's petition; and a second statement for $17,242 showing attorneys' fees and costs incurred from July 19, 2019 to October 13, 2021 for services rendered after the petition was filed. The second billing statement reflected DeMeo's billing rate at $450 per hour. DeMeo spent a total of 37.58 hours, which included her review of probate notes, trial transcript, and trial documents; preparation of Arthur's response, declaration, and brief on surcharge; communications with Arthur, Leestma, and Mogan; and appearances at court hearings.[22]

### b. Kenji's attorneys' fees and costs

On October 15, 2021 Kenji filed a brief requesting the probate court surcharge Williams for Kenji's attorneys' fees of $7,140 and costs of $357 (for a total of $7,497). Kenji argued that under section 9601, the court should surcharge Williams for her

---

[22] Williams and Woodson opposed Arthur's request for attorneys' fees, but their brief is not included in the record on appeal.

bad faith conduct and breach of fiduciary duty based on her failure to provide notice to Kenji before transferring the Hobart property. Kenji asserted "he was forced to employ counsel in this matter to protect his beneficial interest" in the estate. Kenji attached a billing statement from his attorney, William J. Smyth, showing Smyth's billing rate was $300 per hour and he spent a total of 23.8 hours on the case for document review, court appearances, review of a settlement offer, drafting briefs, trial preparation, and appearance at trial. Williams and Woodson opposed Kenji's request for attorneys' fees, arguing Williams did not act in bad faith and the fees were excessive.

### c. *The probate court did not abuse its discretion*

On February 24, 2022 the probate court ordered Williams and Woodson to pay Arthur's attorneys' fees and costs of $17,242 and Kenji's attorneys' fees and costs of $7,497. In its statement of decision, the court found as to Arthur, "Filing and continuing the objections to Arthur Gleason's petition were done in bad faith and constitute a breach of her fiduciary duties. It is in bad faith, as [Williams and Woodson] provide no reasonable or justifiable basis in law or fact to have objected to the petition or to have continued to object up to the eve of trial. Doing so caused the expenditure of monetary resources by Arthur Gleason to protect his interest. Had Arthur Gleason's petition been approved without objection, the attorney fees and costs associated with his petition would have been significantly less (fees of $3,862.50 and costs of $557). Instead, due to Gleason Williams'[s] objections and the continued posture of objections virtually up to trial, Arthur Gleason's attorney fees were, by necessity, increased to

38

$16,912.50, and his costs were $329, totaling $17,241.50. These costs and fees are just and reasonable."

The probate court found as to Kenji, "Due to Gleason Williams'[s] failure to market and sell the property as was her duty as successor administrator, Kenji Gleason was compelled to hire counsel to protect his beneficial interest in the estate. Kenji Gleason incurred $7,140 in attorney fees and $356.89 in costs. These fees and costs totaling $7,496.89 are just and reasonable." The court rejected Williams and Woodson's argument that Kenji's "fees were excessive and unsupported."

The court further explained, "[P]ursuant to Probate Code sections 859 and 9601, it is equitable to surcharge [Williams and Woodson] for the attorney fees and costs of Arthur Gleason and Kenji Gleason, who by the necessity of [Williams's and Woodson's] bad faith actions, were required to engage legal counsel in this matter. [Williams and Woodson], by taking and holding the property away from a portion of its rightful heirs, Arthur and Kenji Gleason, caused a loss in the value of the estate in that it was not distributed to the heirs timely. In addition, as [Williams and Woodson] have kept the property by way of their transfer of it into the Certified Holding Trust, they have profited from it in that they have effectively and wrongly held ownership of it since 2019. Thus, imposing attorney fees and costs is equitable and just and in concert with Probate Code sections 859 and 9601."[23]

---

[23] Because the probate court had discretion to award Arthur and Kenji their attorneys' fees and costs under section 859, we do not reach whether section 9601 authorized the court to surcharge

39

Williams and Woodson contend, as they do with respect to Leestma, that the probate court erred because it failed to use the lodestar method to calculate the award of attorneys' fees to Arthur and Kenji.[24]  As discussed, however, courts are not required to explain their reasoning in awarding attorneys' fees. (*Gunther v. Alaska Airlines, Inc., supra*, 72 Cal.App.5th at pp. 361-362; *Rancho Mirage Country Club Homeowners Assn. v. Hazelbaker* (2016) 2 Cal.App.5th 252, 264; *Gorman v. Tassajara Development Corp., supra*, 178 Cal.App.4th at p. 101.)

The award of attorneys' fees and costs to Arthur is supported by his attorney's billing statement.  The billing statement showed DeMeo's hourly rate was $450, and she spent a total of 37.58 hours providing legal services to Arthur.  On appeal, Williams and Woodson assert DeMeo's billing statement

Williams for Arthur's and Kenji's attorneys' fees and costs. Although Arthur and Kenji did not cite section 859 in their briefs in the probate court, they argued they were entitled to their attorneys' fees and costs for Williams's bad faith.

[24]    Williams and Woodson do not contend the probate court lacked authority to surcharge them for Arthur's and Kenji's attorneys' fees and costs under section 859, instead arguing Williams did not act in bad faith.  In their reply brief, Williams and Woodson contend Leestma lacks standing to respond to their argument that the probate court abused its discretion in granting attorneys' fees and costs to Arthur and Kenji.  However, Williams and Woodson bear "the 'affirmative burden to show error whether or not the respondent's brief has been filed,' and we 'examine the record and reverse only if prejudicial error is found.'" (*Smith v. Smith* (2012) 208 Cal.App.4th 1074, 1078; accord, *Sanchez v. County of San Bernardino* (2009) 176 Cal.App.4th 516, 529.) There was no error.

is "ambiguous," but they do not challenge her hourly rate or point to any specific charges lacking detail.  And, as discussed, DeMeo's billing statement contained specific information on the tasks she performed for Arthur, including the documents she prepared, court appearances, telephone calls, and email communications. Williams and Woodson complain DeMeo failed to provide more detailed descriptions of her emails and telephone calls, but the probate court could reasonably infer the emails and telephone calls related to Arthur's petition to determine entitlement and Leestma's section 850 petition.

Williams and Woodson further contend Williams did not act in bad faith because, as she testified at trial, she initially objected to Arthur's petition because he had stated he did not "'want to have anything to [do] with the house.'"  However, Williams and Woodson fail to explain how this purported comment by Arthur caused him to lose his entitlement to inherit his share of the estate as the sole heir to Paschell.  Nor do they explain why Williams withdrew her objection at the eleventh hour before trial.

Williams and Woodson also argue Arthur should not have recovered for DeMeo's attorneys' fees rendered to Paschell for Paschell's role as administrator from March 2018 to March 2019 and fees incurred by Paschell to evict Kevin from the Hobart property.  But the probate court's award of attorneys' fees and costs were for legal services provided to Arthur, not Paschell, starting on March 25, 2019. Williams and Woodson's argument that Arthur was not entitled to recover attorneys' fees and costs under section 10811 because he did not serve as the administrator of the estate is likewise not persuasive because the

41

probate court awarded fees for Williams and Woodson's bad faith conduct pursuant to section 859, not under section 10811.[25]

The award of attorneys' fees and costs to Kenji is likewise supported by his attorney's billing statement. The billing statement shows Smyth's hourly rate was $300, and he spent a total of 23.8 hours rendering legal services to Kenji. On appeal, Williams and Woodson do not object to Smyth's hourly rate or the billing statement, arguing only that Kenji's fees were inflated because his attorney did not participate at trial. However, they fail to cite a specific charge they contend is excessive.

E.    *Williams and Woodson's Objections to the Statement of Decision Are Meritless*

Williams and Woodson contend the probate court's findings in its statement of decision were ambiguous and failed to resolve material disputed facts. For many of the purported errors, the probate court adequately disclosed its rulings on the material issues and was not required to address every evidentiary fact on which it relied. As to others, substantial evidence supports the probate court's findings. There was no error.

"'"The substantial evidence standard applies to both express and implied findings of fact made by the superior court in its statement of decision rendered after a nonjury trial."'" (*Gomez v. Smith* (2020) 54 Cal.App.5th 1016, 1027; accord, *In re Marriage of Ciprari, supra*, 32 Cal.App.5th at p. 94.) "A party may avoid

---

[25]    Section 10811, subdivision (a), provides for the recovery by the personal representative of reasonable compensation for "extraordinary services" performed by the attorney on behalf of the estate.

implied findings in favor of a judgment, and preserve perceived error in a statement of decision, by making specific objections to the statement of decision.  Code of Civil Procedure sections 632 and 634 prescribe a two-step process for doing so.  '[F]irst, a party must request a statement of decision as to specific issues . . . ; second, if the court issues such a statement, a party claiming deficiencies therein must bring such defects to the trial court's attention to avoid implied findings on appeal favorable to the judgment.'" (*In re Marriage of Ciprari*, at p. 94; accord, *Cameron v. Las Orchidias Properties, LLC* (2022) 82 Cal.App.5th 481, 501 ["'[I]f the statement of decision does not resolve a controverted issue or is ambiguous, and the omission or ambiguity was brought to the attention of the trial court, "it shall not be inferred on appeal . . . that the trial court decided in favor of the prevailing party as to those facts or on that issue."'"].)

"Even where proper procedure under [Code of Civil Procedure] sections 632 and 634 has been followed punctiliously, '[t]he trial court is not required to respond point by point to the issues posed in a request for statement of decision.  The court's statement of decision is sufficient if it fairly discloses the court's determination as to the ultimate facts and material issues in the case.' [Citations.]  'When this rule is applied, the term "ultimate fact" generally refers to a core fact, such as an essential element of a claim.' [Citation.]  'Ultimate facts are distinguished from evidentiary facts and from legal conclusions.' [Citation.]  Thus, a court is not expected to make findings with regard to 'detailed evidentiary facts or to make minute findings as to individual items of evidence.'" (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 983; accord, *Eyford v. Nord* (2021) 62 Cal.App.5th 112, 127 ["'[A] statement of decision need not

address all the legal and factual issues raised by the parties."'].)
If a "'statement of decision sets forth the factual and legal basis
for the decision, any conflict in the evidence or reasonable
inferences to be drawn from the facts will be resolved in support
of the determination of the trial court decision.'" (*Lincoln v.
Lopez* (2022) 77 Cal.App.5th 922, 928; accord, *Gateway Bank
F.S.B. v. Metaxas* (2021) 65 Cal.App.5th 71, 94-95.)

On appeal, Williams and Woodson raise the same
objections to the statement of decision they made in the probate
court. To the extent Williams and Woodson challenge the court's
findings on material issues of fact, the findings are supported by
substantial evidence. They contest the court's finding that the
Hobart property was valued at $350,000, ignoring evidence in the
record that the valuation was made by the probate referee.
Contrary to their contention the probate court erred in finding no
consideration for the transfer of the Hobart property (relying on
Woodson's $15,000 payment to Advance Inheritance), as
discussed, Woodson's partial satisfaction of Kevin's assignment
was made months after the transfer and did not benefit the
estate. Williams and Woodson's argument that the court failed to
address why neither was a bona fide purchaser also fails.
Neither Williams nor Woodson satisfied the elements of a bona
fide purchaser, which require "payment of value, in good faith,
and without actual or constructive notice of another's rights."
(*Deutsche Bank National Trust Co. v. Pyle* (2017) 13 Cal.App.5th
513, 521; accord, *Melendrez v. D & I Investment, Inc.* (2005)
127 Cal.App.4th 1238, 1251.) As discussed, substantial evidence
supports the court's findings that the transfer of the Hobart
property was made in bad faith without consideration or written
notice to the other heirs.

44

Williams and Woodson also challenge the probate court's finding that Woodson received proper notice of Leestma's section 850 petition. But as discussed, the proof of service shows the petition was served on Woodson by mail on August 14, 2020. Williams and Woodson's contention the court failed to address why they were surcharged for Arthur's and Kenji's attorneys' fees and costs or the reasonableness of the fees also lacks merit. As the court found, Williams acted in bad faith, supporting an award of attorneys' fees and costs under section 859.

## DISPOSITION

The order is affirmed. Leestma, as successor administrator, shall recover his costs on appeal.

FEUER, J.

We concur:


PERLUSS, P. J.


MARTINEZ, J.